**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:01CV100-V**

| | | |
|---|---|---|
| ABT BUILDING PRODUCTS CORP. | ) | |
| and ABTco, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, PA. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's renewed motion for judgment as a matter of law, motion for new trial, and motion to alter or amend the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In multiple class action lawsuits filed in 1996, ABT Building Products Corporation and ABTco, Inc. ("ABT") were sued by the purchasers of its hardboard siding product. Many of those lawsuits were either settled or stayed pending the outcome of the lead national class action, Foster, et al. v. ABTco, Inc., et al., No. CV-95-151-M (Ala.. Cir. Ct.), which settled in September 2000 (the "Foster Settlement"). ABT subsequently sought insurance coverage for its claims from five insurers that had written policies which potentially covered the losses, including Employers Insurance of Wausau ("Wausau"). ABT and Wausau entered into a settlement agreement whereby the parties agreed to dismiss the insurance coverage lawsuits against each other. In exchange for this release, Wausau agreed to pay ABT $1.5 million to pay for its share of costs associated with the Foster

settlement.

With the exception of its claim against Defendant National Union Fire Insurance Company of Pittsburgh ("National Union"), ABT settled its insurance claims. National Union denied coverage, and ABT filed the instant lawsuit seeking a declaratory judgment by this Court that its losses are covered under the policy written by National Union. In addition, ABT's Complaint alleged claims for breach of contract, bad faith claims-handling, and unfair and deceptive trade practices.

After a nine day trial, the jury returned a verdict against National Union. Specifically, the jury found (1) that National Union breached its duty to defend ABT; (2) that ABT was damaged by National Union's breach in the amount of $2,500,000.00; (3) that National Union misrepresented the terms of its 1997 policy for the purpose of changing National Union's insurance coverage obligations in 1998-2000, and ABT relied on that misrepresentation to its detriment; (4) that National Union failed to attempt in good faith to effectuate a settlement of the coverage dispute with ABT; (5) that ABT sustained damages in the amount of $3,900,000.00 as a result of National Union's conduct in failing to settle the dispute; (6) that National Union's conduct was of such an arbitrary and reprehensible nature as to constitute bad faith; (7) that ABT sustained damages in the amount of $3,900,000.00 as a result of National Union's bad faith conduct; (8) that National Union's conduct was accompanied by some element of aggravated conduct - malice, fraud or oppression- that indicated a reckless indifference to the consequences; (9) that an award of punitive damages in the amount of $7,500,000.00 was proper; (10) that the damage alleged in the homeowners' lawsuits was the result of a single "occurrence," that is, alleged defects in the ABT siding; (11) that National Union's policy covers the <u>Foster</u> settlement claims arising from property damage between the period

of January 1, 1997 and January 31, 2000; (12) that National Union's share of the amount already paid under the Foster Settlement is $1,448,709.00 for homeowner class counsel fees, $234,719.00 for notice costs, and $177, 312.00 for claims administration fees; (13) that 22.5% of the Foster payments to homeowners represents the costs of the replacement of ABT siding, and 77.5% of the Foster payments represents the costs of all other materials and labor; (14) and that National Union is responsible for $378.06 for administrative costs per claim for future claims.

The Court trebled statutory damages to the amount of $11,700.000.00, pursuant to N.C. Gen. Stat. § 75-16. The Court concluded that National Union willfully engaged in an unfair or deceptive trade practice and that there was an unwarranted refusal by National Union to fully resolve the matter constituting the basis of the suit. Louisiana Pacific, ABT's successor in interest, elected to recover the treble damages, and judgment was entered in favor of ABT in the amount of $2,500,000.00 for the breach of the duty to defend and $11,700,000.00 in damages based on unfair or deceptive trade practices.

The Court also issued a Declaratory Judgment, declaring that Louisiana Pacific is entitled to indemnification from National Union for Foster settlement claims arising from installation of ABT siding occurring during the period from January 1, 1997 to January 31, 2000. The Court further declared that National Union's obligation to indemnify for future Foster settlement claims begins once Louisiana-Pacific has paid Foster settlement costs or claims attributable to installations during the National Union coverage period equal to the $3,000,000.00 in underlying insurance coverage. As of the date of the verdict, Louisiana-Pacific had paid Foster settlement costs of $1,860,740.00 and Foster settlement claims of $275,598.00. The Court decreed that National Union was obligated to indemnify Louisiana-Pacific for 77.5% of the amount of each Foster settlement claim attributable

to installations during the National Union coverage period. National Union was ordered to pay $387.06 for each applicable <u>Foster</u> settlement claim to cover the administrative costs of handling such claims. Finally, the Court ordered that the costs taxed against National Union include Plaintiffs' reasonable attorneys' fees. The Amended Judgment was entered September 30, 2004.[1]

Defendant National Union timely filed the instant post-trial motions renewing its motion for judgment as a matter of law, moving for a new trial, and moving the Court to alter or amend the Amended Judgment. Specifically, National Union seeks judgment in its favor on the duty to defend, duty to settle, duty to indemnify, statutory damages, bad faith and punitive damages issues. National Union contends that all damages entered against it should be vacated, that it is entitled to a declaration that no coverage is presently owed because ABT failed to exhaust underlying coverage and self-insured retentions, and that no coverage is owed because the underlying claims do not fall within the insuring agreement or are excluded by the "Your Product" exclusion.

National Union moves for a new trial under Rule 59, arguing that the Court erred by allowing the jury to decide issues of law, namely, whether ABT exhausted its underlying coverage. National Union also seeks a new trial because the Court erroneously admitted into evidences the Aries attorney-client letter and the untimely produced defense bills, and these errors permeated the entire verdict.

Finally, National Union moves to alter or amend the judgment, seeking a remittitur on damages stemming from the violation of the North Carolina Deceptive Trade Practices Act to $152,062.00 (which represents the difference in premium between the 1998 policy and the last two years of the 1997 policy) and an entry of a declaratory judgment in National Union's favor.

---

[1] Judgment was entered on September 22, 2004 and was amended *sua sponte* on September 30, 2004.

## II. <u>STANDARDS OF REVIEW</u>

### A.    MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B)

A jury verdict is permitted to stand unless, under Rule 50(b), the court finds that the verdict is not supported by substantial evidence. <u>Stamathis v. Flying J., Inc.</u>, 389 F.3d 429, 436 (4th Cir. 2004) (quoting <u>Mattison v. Dallas Carrier Corp.</u>, 947 F.2d 95, 100 (4th Cir. 1991)). The court must make such a determination "without weighing the evidence or considering the credibility of the witnesses." <u>Bonner v. Dawson</u>, 404 F.3d 290, 295 (4th Cir. 2005) (quoting <u>S. Atl. Ltd. P'Ship of Tennessee L.P. v. Riese</u>, 284 F.3d 518, 532 (4th Cir. 2002)). The court is required to view the evidence in the light most favorable to the non-moving party and draw every legitimate inference in favor of the non-moving party. <u>Figg v. Schroeder</u>, 312 F.3d 625, 635 (4th Cir. 2002) (internal quotations omitted); <u>see also</u> <u>Bonner</u>, 404 F.3d at 295. The motion is granted only if the court can determine that "the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." <u>Id.</u> The jury's verdict must be upheld if reasonable minds could differ. <u>Dennis v. Columbia Colleton Medical Center, Inc.</u>, 290 F.3d 639, 644 (4th Cir. 2002).

### B.    MOTION TO ALTER OR AMEND THE JUDGMENT PURSUANT TO RULE 59(E)

A court may grant a Rule 59 motion in three circumstances: "(1) to accommodate an intervening change in law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." <u>Bogart v. Chappell</u>, 396 F.3d 548, 556 (4th Cir. 2005) (quoting <u>United States v. Westinghouse Savannah River Co.</u>, 305 F.3d 284, 290 (4th Cir. 2002). The rule permits a district court to correct its own errors, "sparing the parties and the appellate courts the burden of unnecessary proceedings." <u>Pacific Ins. Co. v. American Nat'l Fire Ins</u>

<u>Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998). "Rule 59(e) may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 *Wright & Miller Federal Practice & Procedure* § 2810.1, at 127-28 (2d ed. 1995); <u>see also</u> <u>Pacific Ins.</u>, 148 F.3d at 403 ("Rule 59(3) motions may not be used to raise arguments which could have been raised prior to the issuance of judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.")

### C.     MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(B)

A new trial is warranted if (1) the verdict is against the clear weight of the evidence; (2) the verdict is based on evidence which is false; or (3) the verdict will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. <u>Kussman v. Maryland</u>, 272 F.3d 625, 639 (4th Cir. 2001). Unlike a motion under Rule 50(b), a court is permitted to weigh the evidence when considering a motion for a new trial under Rule 59(e). <u>Dennis v. Columbia Colleton Medical Center, Inc.</u>, 290 F.3d 639, 650 (4th Cir. 2002).

### III.  <u>LEGAL ANALYSIS</u>

### A.  EXHAUSTION

National Union devotes the bulk of its post-trial motions to arguing that ABT never exhausted the underlying coverage and, therefore, National Union's duty to defend and statutory duty to settle were never triggered. National Union contends that ABT needed to exhaust $3 million in underlying coverage and that this amount was not exhausted by the $1.5 million settlement with Wausau. National Union points to the Amended Judgment, filed September 30, 2004, which states that "National Union's obligation to indemnify Louisiana-Pacific for future <u>Foster</u> settlement claims shall begin after Louisiana-Pacific has paid <u>Foster</u> settlement claims attributable to installations

during the National Union coverage period equal to the $3,000,000 in underlying insurance coverage." Amended Judgment at 6.

National Union's arguments fail for two primary reasons. First, as the language of the Amended Judgment makes clear, the $3,000,000.00 figure refers to indemnity payments and not to National Union's defense obligation. Second, the plain language of the National Union policy and the Joint Stipulations of Fact filed before trial identify the $1,000,000.00 Wausau limit that ABT needed to exhaust before National Union owed a duty to defend ABT. The Schedule of Underlying Insurance attached to the Commercial Umbrella Declarations of National Union's policy states that the limits of liability are $1,000,000 per occurrence and $2,000,000.00 in the aggregate. The Joint Stipulations of Fact also plainly state that "the 1997 Wausau policy had a 'per occurrence' limit of $1,000,000 and an 'aggregate' limit of 2,000,000 for claims involving or arising out of liability on account of ABT's finished products." Joint Stip. of Fact ¶ 7, filed June 2, 2004 (Joint Exh. 1).

The Court instructed the jury, after a nine day trial in which National Union had ample opportunity to make their factual arguments to the jury, to apply the facts of the case to the policy language. The jury did so and concluded that "the damage alleged in the homeowners' lawsuits was the result of a single 'occurrence,' that is, alleged defects in the ABT siding." See Verdict Form, Part E(1). Thus, ABT needed to exhaust $1,000,000.00 in underlying coverage before National Union's duty to defend was triggered. The jury heard the evidence and arguments of both parties and concluded that National Union had breached its duty to defend ABT and assessed damages accordingly. This verdict was supported by substantial evidence and National Union has not made any meritorious argument in favor of granting its motion for judgment as a matter of law on this issue or to grant a new trial.

## B. STATUTORY VIOLATIONS

### 1. North Carolina Deceptive Claims Practices Act

National Union claims that, as a matter of law, it did not violate the Deceptive Claims Practices Act by refusing to pay ABT's settlement. National Union correctly maintains that reasonably questioning an insured's damage estimates does not mean that the insurer failed to effectuate a settlement after liability was reasonably clear. Def.'s Br. at 36 (citing Topsail Reef Homeowners Assoc. v. Zurich Specialties London, Ltd., 11 Fed. Appx. 225, 2001 WL 565317, *5 (4th Cir. 2001). Such a standard would be tantamount to strict liability, as National Union points out. However, national Union's current position - that it reasonably questioned the settlement amount demanded by ABT - is merely an attempt to re-litigate an issue that was already litigated and decided by a unanimous jury. The jury considered the reasonableness of National Union's actions, and, as evidenced by their unanimous finding that National Union's conduct was "of such an arbitrary and reprehensible nature as to constitute bad faith," determined that National Union's actions went well beyond "reasonableness." See Verdict Form p. 2 and Amended Judgment p. 2.

Evidence presented at trial demonstrated that every other primary and excess carrier settled with ABT after being provided the same information presented to National Union, including the fact that ABT agreed to assume liability for claims and expenses in exchange for securing releases of other covered consequential damages. The evidence also revealed that National Union made no attempt to settle with ABT and refused to make a settlement offer without additional information that had long since been provided. In its brief, National Union argued that there were numerous sound reasons why it chose not to settle. The jury, however, listened to the presentation of evidence and the arguments of counsel and, after a nine day trial, unanimously disagreed with National Union's

version of the events. Whether an insurer acted in bad faith is a jury question, and this jury, with ample and compelling support in the record, concluded that National Union did in fact act in bad faith in refusing to settle the coverage dispute. National Union obviously disagrees with this outcome, but that disagreement does not mean the jury's verdict was unreasonable. To the contrary, the jury's finding of bad faith was supported by substantial evidence presented over the course of the nine day trial. The Court declines to overturn the jury's finding.

## 2. Remittitur

Excessive damage awards by a jury may be set aside and a new trial ordered. <u>Occidental Life Insurance Co. of N.C. v. Pat Ryan & Assoc.</u>, 496 F.2d 1255, 1264 (4th Cir. 1974), *cert. denied* 419 U.S. 1023 (1974). Grossly excessive damage awards must be set aside as violative of the due process clause of the Fourteenth Amendment. <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996). A court must consider (1) the "degree of reprehensibility" of the wrongdoing; (2) the "disparity between the harm or potential harm suffered and the punitive damages awarded;" and (3) the "difference between this remedy and the civil penalties authorized or imposed in comparable cases." <u>Id.</u> In North Carolina, punitive damages are capped by statute at three times compensatory damages. N.C.G.S.A. § 1D-25. "Within the statutory limits, the jury may award punitive damages in its sound discretion, and the trial court should not disturb such an award unless the amount assessed is 'excessively disproportionate to the circumstances of contumely and indignity present in the case.'" <u>Zubaidi v. Earl L. Pickett Enterprises, Inc.</u>, 595 S.E.2d 190, 196 (N.C. Ct. App. 2004).

National Union asks this Court to remit the damage award stemming from the statutory violation because the award was not supported by the evidence. Specifically, National Union contends that damages should be remitted to $152,062.00, which represents the difference in policies

following the renegotiation of terms stemming from National Union's failure to advise ABT of the three year period. If trebled, the award would increase to $456,186.00.

The damage amount found by the jury - $3.9 million - is entirely reasonable and supported by the evidence. It is less than ABT's $5 million settlement offer and less than ABT's $5 million estimate of settlement costs. This amount is also substantially less than the expert's estimate of National Union's share of the $87 million in alleged consequential damages in the underlying defective siding claims. Indeed, the jury could have arrived at a lesser sum, including the $152,062 representing the difference between the two policies. The amount at which the jury arrived, however, is reasonable, supported by the evidence and not excessively disproportionate. Therefore, this Court declines to subject the award to remittitur.

National Union also argues that attorneys' fees are not warranted because it did not act willfully. The jury, however, disagreed and found that National Union acted in bad faith with the presence of some element of aggravating conduct (malice, fraud or oppression). Because this Court has already determined that the jury's finding of bad faith is supported by ample evidence presented at trial, the Court will not disturb the award of attorneys' fees.

## C. SCOPE OF INSURING AGREEMENT

### 1. Scope of the Insuring Agreement

National Union argues that the damages underlying the <u>Foster</u> settlement payments - defective hardboard siding manufactured by ABT - are not covered by the Insuring Agreement for two reasons. First, they are not covered because they are not the result of an "accident" or "occurrence" as those terms have been construed by the courts. An "accident" requires unforeseeability, and damage resulting from faulty workmanship is entirely foreseeable. Under this

interpretation, ABT's poor workmanship in installing the siding is not an "occurrence" because the resulting damage was entirely foreseeable Def.'s Br. at 54 (citing <u>Vick Construction Co. v. Penn. Nat. Mut. Cas. Ins. Co.</u>, 52 F.Supp. 569, 580 (E.D.N.C. 1999).  Second, the damage resulting from the defective siding is not "property damage" as contemplated by the Insuring Agreement because "property damage" requires that the property be undamaged or uninjured at some previous point in time.    Def.'s Br. at 56 (citing <u>Vick</u>, 52 F.Supp.2d at 582.    According to National Union, no "property damage" occurred in this case because the siding affixed to the homes was defectively installed and therefore never in an undamaged state.

Once again, National Union attempts to re-litigate issues of this case that have been previously decided by this Court and a unanimous jury.  The jury applied the facts of the case to the language of the Insuring Agreement and unanimously concluded that it met the definition of an "occurrence."  <u>See</u> Verdict form, Part E(1).   This decision is reasonable, is supported by ample evidence presented at trial and is consistent with this Court's interpretation of the policy language at issue.  Furthermore, ABT's workmanship did not cause property damage because ABT never performed work on the underlying plaintiffs' homes.  Rather, the product itself caused the property damage to plaintiffs' homes.  ABT is *not* seeking coverage for actual replacement of the product.  It is merely seeking coverage for the consequential damages caused by its product.  <u>Vick</u> is therefore inapposite.  The Court declines to set aside the jury's verdict and enter judgment in favor of National Union.  The court also declines to order a new trial on the ground that the damages are outside the scope of the Insuring Agreement.

## 2. The "Your Product" Exclusion

National Union next argues that the "Your Product" exclusion contained in the Insuring Agreement does not cover payments made under the <u>Foster</u> settlement agreement. The exact language of the "Your Product" exclusion precludes coverage for "property damage to your product arising out of it or any part of it." It defines "your product" as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by...you... Your Product includes...warranties or representations made at anytime with respect to the fitness, quality, durability, performance or use of Your Product."

National Union claims that the "overwhelming authority" to address the issue has concluded that a "your product" exclusion precludes coverage for the cost of the product itself as well as for the labor costs of repair or replacement of the property. Def.'s Br. at 57. Although some courts may have interpreted the "your product" exclusion in this way, others have interpreted the "your product" exclusion as barring coverage only for the cost of a siding product. "Under circumstances where the damages alleged include damage to property not supplied by the insured, most cases hold that the insurance company is liable for repair operations, excluding only the cost of the replacement product." <u>W.R. Bonsal Co., Inc. v. Twin City Fire Insur. Co.</u>, 3:97cv475-Mu (Aug. 17, 2000) (citing <u>Forest City Dillon, Inc. v. Laminators, Inc.</u>, 852 F.2d 168 173 (6th Cir. 1988)).

The instant case falls squarely into the holding in <u>W.R. Bonsal</u>. The jury determined that 22.5% of the <u>Foster</u> payments represented the cost of replacement of ABT siding and 77.5% of the <u>Foster</u> payments represented the cost of labor and other materials used in repairing the damage to the homes where the siding was installed. Thus, the payments relating to the replacement of the defective siding are precluded from coverage, but the Insuring Agreement does cover the cost of

repair operations. The jury considered and rejected National Union's position, and the Court will not overturn their reasonable and amply supported findings.

## D. ADMISSION OF EVIDENCE

### 1. Aries Letter

National Union contends that the Court improperly admitted into evidence a letter written by Christopher Aries, an attorney at Lester, Schwab, Katz & Dwyer LLP, to Aimee Tersy, an employee at National Union, discussing the coverage dispute between National Union and ABT. The Court admitted this letter over National Union's objection for the limited purpose of allowing the jury to decide what bearing the letter may have had on National Union's state of mind.

National Union again challenges the admission of this letter and seeks a new trial on that basis. National Union argues that the letter is not relevant under Federal Rule of Evidence 401 and that the letter should have been excluded under Federal Rule of Evidence 403 because its prejudicial effect outweighed its probative value. National Union further argues that under a Tenth Circuit case, Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co., 71 F.3d 335 (10th Cir. 1995), views of outside counsel and an attorney's litigation tactics are neither binding on a client nor probative of the client's state of mind.

This Court declines to overturn its previous decision to admit the letter and declines to grant a new trial on that basis. The Aries letter was directly relevant to National Union's state of mind - specifically its refusal to negotiate with ABT - and highly probative of National Union's bad faith by casting serious doubt on National Union's good faith defense of the coverage dispute. Timberlake is inapposite because ABT never argued to this Court or to the jury that "litigation tactics" tended to prove National Union's bad faith, and, moreover, the Aries letter does not relate

-13-

to litigation tactics. The Court instructed the jury that it was to consider the letter "for the limited purpose of deciding what bearing it may have, if any, on the state of mind of the defendant, National Union Fire, such as intent or knowledge." The admission of the letter is not a basis for granting a new trial in this matter.

## 2. Defense Invoices

National Union next argues that this Court should grant its motion for a new trial because ABT untimely produced numerous documents, namely, attorneys' fees invoices, and that the evidence contained in these invoices should have been excluded from trial. These invoices were not produced until February 3, 2004, six months after the close of discovery but four months before the start of the trial.

Defendants cited to various cases where the untimely disclosure of documents created an incurable surprise (see, e.g., Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596-597 (4th Cir. 2003)) or where a litigant *refused* to produce certain documents to the opposing party (see, e.g., Bateson v. Neal Spelce Associates, Inc., 112 F.R.D. 632 (W.D. Tex. 1986)). None of these cases apply to the instant case. Although the invoices were produced to National Union six months after the close of discovery, they were produced *four months* prior to the commencement of trial, hardly so untimely as to create an incurable surprise. Furthermore, there is no evidence that National Union "refused" to produce these invoices, as was the case in Bateson. The Court finds Defendant's arguments unpersuasive and declines to grant a new trial.

# IV.  CONCLUSION

Throughout its motions, National Union attempts to rehash and re-try various issues already decided by this Court and by a unanimous jury.  National Union has not presented any meritorious arguments that would warrant the extreme remedies of overturning the jury's verdict, re-trying the case or amending the judgment.

**IT IS THEREFORE ORDERED** that Defendant National Union's renewed motion for judgment as a matter of law pursuant to Rule 50(b), National Union's motion for a new trial pursuant to Rule 59(a), and National Union's motion to alter or amend the judgment pursuant to Rule 59(e) are **DENIED**.

**Signed: May 31, 2005**

Richard L. Voorhees
United States District Judge